State, ex rel. MARSHALL & ILSLEY, vs. RUSK, Bank Comptroller.

*Lien of state upon interest of its bonds, deposited by banks with comptroller ; does not attach to substituted securities.*

1. A bank of this state purchased bonds of the state, paying seventy per cent. in cash, and giving its bond to pay the remaining thirty per cent. in semi-annual installments, with an agreement that said bonds should be deposited with the bank comptroller as security for the circulation of the bank, and that the state treasurer, on default in the payment of any such installment, might retain for the use of the state the amount thereof out of the interest money falling due upon the bonds so deposited, if the circulation of the bank should then, in the opinion of the comptroller, be fully secured. These bonds were afterwards withdrawn by the bank, and other securities received in lieu thereof, according to the provisions of the banking law. *Held,* that in the absence of any specific agreement for that purpose, the state had no lien upon the substituted securities for the amount of unpaid installments due it from the bank.

2. The bank comptroller holds the securities deposited with him under the banking law, as trustee for the banks and bill-holders; and there is no indebtedness or liability on the part of the state to the banks by reason of such deposit.

*MANDAMUS.* The affidavit filed for the relators shows the following facts: In July, 1861, the state sold to the Rock River Bank its bonds to the amount of $42,000, and received

seventy cents on the dollar, and the bond of the bank, conditioned for the payment of thirty cents more on the dollar, in semi-annual installments of one per cent., with an agreement that the state bonds so purchased should be deposited with the bank comptroller as security for the circulation of the bank, and that the state treasurer, in case said semi-annual installments, or any of them, should not be paid as they became due, might retain for the use of the state and in payment of such unpaid installments, the amount thereof out of the interest money falling due upon any bond belonging to said bank, in the possession of such treasurer, if the circulation of said bank should then, in the opinion of the bank comptroller, be fully secured. - After said state bonds were so deposited with the comptroller, the bank collected in its circulating notes, and deposited them with the comptroller, withdrawing from time to time, as such deposits were made, like amounts of the state bonds deposited as security for the notes, until, on the 5th of June, 1862, its outstanding circulating notes, and the bonds deposited as security therefor, amounted each to $7000. On that day the bank deposited with the comptroller $7000 in United States treasury notes, as security for its outstanding circulation, and withdrew, pursuant to law, its remaining Wisconsin bonds. In February, 1863, the bank assigned to the relators, for value, all its securities and money that might be in the hands of the bank comptroller at the expiration of the time limited for the redemption of its bills (by sec. 12, ch. 71, R. S.), and gave relators an order on the comptroller for the same. It also gave due notice that all its circulating notes must be presented at the comptroller's office for redemption within three years. At the end of that time there remained in the comptroller's hands $1246 of the treasury notes so deposited, which he refused on demand to pay over to the relators, insisting that they belonged to the state by reason of the fact that since January, 1862, said bank had failed to pay certain semi-annual

installments of the purchase money of the state bonds first deposited by it as above stated, and that he (said comptroller) had been notified by the state treasurer not to pay said treasury notes to the bank or its assignees.

An alternative *mundamus* having issued, the bank comptroller moved to quash.

*The Attorney General*, for the motion, argued that the securities deposited with the comptroller are to be regarded as *held by the state* as trustee for the security of bill-holders. *People v. Walker*, 21 Barb., 630. At the time of the assignment to the relators, the bank owed the state two semi-annual installments, amounting to $840. The state had them in its hands (in the possession of the comptroller) a fund, the balance of which would belong to the bank after the redemption of its circulation; and the bank owed the state $840, and the right of set-off to that amount became perfect in the state. 2 Story's Eq. Jur., § 1435; 1 Parsons on Con., 198; 2 id., 733 et seq.; 6 Paige, 220; *Comm. v. Phœnix Bank*, 11 Met., 129. 2. The interest of the bank was not the subject of sale until the time for redemption had expired. Clearly it was not subject to seizure under judicial process. Nor could the bank make any transfer which the comptroller was bound to notice. The only way provided for withdrawing the funds was by order of the bank; and any such order would be revocable at any time before the money was actually drawn out. The statute, moreover, seems to contemplate an order drawn by the bank *after* the right to withdraw the money has accrued. In that case the relators would seem not to have any standing in court; but the bank should have made the application. In any event, the relators' title to the money must be regarded as of no older date than March 15, 1866, and before that time installments were due the state greater in amount than the claim of the bank. 3. The agreement of the bank to deposit the bonds as security, was an implied agreement for a continuing deposit.

By the act of the bank, in violation of this implied agreement, the funds on which the state had an express lien have been withdrawn. The money in the comptroller's hands has taken the place of those funds; and equity ought to transfer the lien to them.

*Gregory & Pinney, contra,* argued that the original agreement of the bank did not constitute a pledge of the *bonds* deposited, but at most only of the *interest* thereon; and to the point that such pledge would not bind the property in dispute, even if received in exchange for the pledged property, they cited *Rhines v. Phelps,* 3 Gilm., 455.

DOWNER, J.   The defendant contends that the state, by virtue of the agreement entered into by the bank, had a lien on the state bonds deposited with the bank comptroller, or the interest falling due thereon, for the payment of all installments due and unpaid on the bond of the bank; and that when the state bonds were withdrawn, and other securities, or moneys received in lieu thereof according to the provisions of the banking law, the lien, by operation of law, attached to such moneys or securities.   We know of no principle of law to that effect, and we have been referred to no authorities that sustain the position. The lien of the state (if lien there ever was) attached only to the *interest money* or coupons of the bonds.   And when the bonds were withdrawn, and money left in their place which drew no interest, it is obvious that there was nothing left in lieu of the interest thereafter accruing.   But the agreement between the bank and the state shows that the claim of the state was not intended to interfere with the operation of the banking law; and if the lien of the state attached to the bonds themselves, it could only attach while they were in the hands of the state treasurer; and there being no agreement for any lien or claim on other securities after the bonds were beyond the control of the officers of the state, we must hold the position untenable.

2. The defendant insists that the state has a right to set off its debt against the bank for the semi-annual installments remaining unpaid and past due at the time of the assignment by the bank to the relators, against its indebtedness to the bank. What indebtedness on the part of the state? Is the state indebted to the bank? It was said in argument that the bank comptroller is an officer of the state, and the moneys deposited with him as such officer by the bank are in possession of the state; and that the state is the real trustee, holding all securities and moneys deposited under the banking law with either the state treasurer or bank comptroller. If the state is the real trustee and indebted to the bank for the moneys deposited with the bank comptroller to redeem its bills, then perhaps it might set off against such indebtedness that of the bank to the state. But it appears to us that our constitution, and the whole theory of the banking law, exclude the idea of any such indebtedness on the part of the state. If the state is so indebted, and its officers or agents unlawfully use the moneys or securities deposited with them by any of the banks, then the state would be liable to the banks for such defalcation or breach of trust on the part of the state treasurer or bank comptroller. We think that in carrying into effect the banking law, the state provides certain officers who shall act as trustees for the banks and the billholders, and has required them to give security for the faithful performance of their duties. In this respect they are similar to other public officers who receive and hold the moneys or property of individuals, such as the clerks of circuit courts and sheriffs. They and their sureties are liable to the individuals who suffer by their wrongful official acts. This, we hold, is true as to the bank comptroller, which is all that is necessary to decide in this case. It may be that a distinction should be made between the bank comptroller and state treasurer. The law of New York under which the decision

in *The People v. Walker*, 21 Barb., 642, cited by defendant's counsel, was made, is very different from our own banking law. In that case it appeared that the state had actually assumed and paid the liabilities of the insolvent banks on account of their circulation, and was entitled to the contributions to the safety fund to re-imburse her.

We are of opinion that the claim of the bank was assignable.

*By the Court.*—The motion to quash the alternative writ is overruled, and leave given to answer within twenty days.